# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOARD OF TRUSTEES OF THE KERN COUNTY ELECTRICAL PENSION FUND, et al., <br><br> Plaintiffs/Judgment Creditors, <br><br> v. <br><br> ATKINS SPECIALTY SERVICES, INC., <br><br> Defendant/Judgment Debtor. <br> _____ / | Case No. 1:16-cv-01925-NONE-SKO <br><br> **FINDINGS AND RECOMMENDATION THAT PLAINTIFFS' MOTION TO AMEND JUDGMENT BE DENIED** <br><br> (Doc. 16) <br><br> **OBJECTIONS DUE: 21 DAYS** |

## I. INTRODUCTION

On June 10, 2020, Plaintiffs Board of Trustees of the Kern County Electrical Pension Fund, Board of Trustees of the Kern County Electrical Workers Health & Welfare Trust, and Board of Trustees of the Kern County Electrical Journeyman & Apprenticeship Training Trust (collectively, "Plaintiffs") filed a motion to amend the judgment entered against Defendant Atkins Specialty Services, Inc. ("Defendant") to add Jeffrey Atkins, Rhonda Atkins, and Atkins Services Inc. as judgment debtors pursuant to Federal Rule of Civil Procedure 69 (the "Motion"). (Doc. 16.) Plaintiffs filed a reply in support of the Motion on July 22, 2020, noting that they had received an affidavit in response to the Motion, but that it had not been filed with the Court. (Doc. 20.) On July

27, 2020, the district judge vacated the hearing, took the matter under submission, and ordered the filing of any opposition to the Motion by no later than fourteen days from service. (*See* Doc. 21.)

On October 22, 2020, nonparty Jeffrey Atkins filed a response to the Motion. (Doc. 24.) The Motion was referred to the undersigned for the preparation of findings and recommendations on January 26, 2021. (Doc. 25.)

The undersigned has considered the Motion, supporting documentation, and the belatedly-filed opposition by Jeffrey Atkins.[1] For the reasons set forth below, the Court RECOMMENDS that the Motion be denied.

## II.   FACTUAL AND PROCEDURAL BACKGROUND[2]

Plaintiffs are "multiemployer benefit plans operating in the electrical industry and are created pursuant to collective bargaining agreements between the National Electrical Contractors Association, Kern County Chapter ("NECA"), and the International Brotherhood of Electrical Workers, Local 428 ('IBEW')." (Doc. 16-1 at 5; *see also* Doc. 1 ("Compl.") ¶¶ 4, 7–8.) They exist "to provide pension, health and training benefits to the participants, both active and retired, who are members of the IBEW, and to their beneficiaries." (Doc. 16-1 at 5.) Defendant is a now-dissolved corporation that "performed all types of electrical work" and was listed with the California Secretary of State as an "electrical-instrumentation-con[struction]" business. (Doc. 16-10; Doc. 24 at 10.) Jeffrey Atkins was the Chief Executive Officer (CEO) and director of Defendant. (Doc. 16-9 ¶ 3; Doc. 16-10 at 4.) Rhonda Atkins was the Secretary and Chief Financial Officer (CFO), director, and shareholder of Defendant. (Doc. 16-9 ¶ 3; Doc. 16-10 at 4; Doc. 16-19 ¶ 1.)

In January 2013, Defendant executed a written agreement for the years 2012 through 2014, pursuant to which it became a signatory to collective bargaining agreements between the IBEW and NECA. (Doc. 16-1 at 6; Compl. ¶¶ 7, 9–12.) These agreements contractually obligated Defendant to, among other things, submit "fringe benefit contributions" to Plaintiffs for each hour worked by its employee-members of the IBEW. (*Id.*) The agreements also bound Defendant to certain terms

---

[1] Like the presiding district judge (*see* Doc. 21), the undersigned finds that consideration of Jeffrey Atkins' submission is not prejudicial to Plaintiffs, particularly given that Plaintiffs had an opportunity, and did, respond to that document. (*See* Doc. 20.)

[2] The factual background is based on the operative complaint, the parties' filings in this case, and the briefing on the Motion.

1 regarding the collection of delinquent contributions. (*Id*.) In August 2013, the agreement was
2 renewed for the years 2014 through 2017. (Doc. 16-1 at 6; Compl. ¶ 8.)

3       Beginning in July 2015, Defendant became "consistently late and deficient" in submitting
4 their fringe benefit payments and accompanying contribution reports. (Compl. ¶ 16.) From June
5 2016 to November 2016, Defendant made no payments to Plaintiffs. (Doc. 16-26 ¶ 5.) The only
6 check that was received from Defendant in 2016 was returned from the bank for insufficient funds.
7 (*Id*.)

8       On December 23, 2016, Plaintiffs filed a complaint against Defendant seeking payment of
9 delinquent fringe benefit contributions, interest, liquidated damages, and attorney's fees . (Compl.
10 ¶¶ 17–18.) After being served with the complaint and prior to answering, Defendant, represented
11 by counsel, filed for bankruptcy. (*See* Doc. 6 (indicating Chapter 11 proceedings filed January 31,
12 2017).) Plaintiffs were unsecured creditors with a priority claim in the bankruptcy proceeding. (*See*
13 Doc. 10 at 2.)

14       In March 2017, Plaintiffs agreed to the dismissal of Defendant's bankruptcy case in
15 exchange for entering a stipulated judgment in the instant action. (Doc. 16-9 ¶ 11; Doc. 16-18.)
16 Defendant's bankruptcy proceedings were dismissed on June 13, 2017. (*See* Doc. 8.)

17       On July 14, 2017, the parties filed a stipulated judgment and order ("Stipulated Judgment")
18 in which the parties agreed judgment would be entered in the amount of $153,526.31 against
19 Defendant, representing unpaid fringe benefit contributions for which Defendant would make one
20 initial payment of $5,000 and monthly payments plus interest until the judgment was satisfied. (*See*
21 Doc. 9.) So long as Defendant made timely payments to Plaintiffs as required by the Stipulated
22 Judgment, Plaintiffs agreed to not commence collection methods for the full amount of the
23 Judgment. (*See id*.) If Defendant failed to make any payment in the time and manner specified,
24 however, the total remaining sum of the judgment would become immediately due and payable.
25 (*See id*.) If such default continued after ten days' written notice to Defendant, the Stipulated
26 Judgment entitled Plaintiffs to seek entry of a Revised Final Judgment in their favor for the amount
27 due as demanded, less any sums paid on account, plus accrued interest in the amount of 10% per
28 annum. (*See id*.) The Court entered the Stipulated Judgment on July 25, 2017. (Doc. 10.)

3

Defendant's June 2017 payment made pursuant to the Stipulated Judgment was returned by the bank for insufficient funds. (Doc. 16-1 at 8; Doc. 16-26 ¶ 13; Doc. 16-30.) Defendant satisfied its obligation under the Stipulated Judgment for August and September 2017, but was thereafter in default. (Doc. 16-1 at 8; Doc. 16-26 ¶ 14; Doc. 16-30. *See also* Doc. 11 at 2.)

On March 15, 2018, Plaintiffs' counsel sent the requisite 10-day notice under the Stipulated Judgment to Defendant. (Doc. 16-1 at 8; Doc. 16-4. *See also* Doc. 11 at 8.) In response, Jeffrey Atkins wrote that while Defendant "tried over the months following the [bankruptcy] filing to make the company profitable enough to pay their obligations," it "has at this time no assets or contracts in which to move forward." (Doc. 16-5.) On March 18, 2018, Jeffrey Atkins sent "notice" to IBEW that Defendant "has closed its doors for any future business as of 02/23/2018." (Doc. 16-1 at 8; Doc. 16-3. *See also* Doc. 11 at 9.)

In view of Defendant's default, Plaintiffs sought Defendant's agreement to sign onto a revised final judgment (the "Revised Final Judgment"). (Doc. 16-6 at 1.) Several months later, Rhonda Atkins responded that the Revised Final Judgment had been signed and returned. (*See id.* at 4.) On October 17, 2018, Plaintiffs filed a joint motion to vacate the prior Stipulated Judgment and enter the agreed-upon Revised Final Judgment. (Doc. 11.) The Court granted the motion and the Revised Final Judgment was entered against Defendant in the amount of $136,361.12 on October 31, 2018. (Docs. 14 & 15.)

On December 21, 2018, Jeffrey Atkins and Rhonda Atkins filed a Certificate of Dissolution of Defendant with the California Secretary of State. (*See* Doc. 16-9 ¶ 3; Doc. 16-10 at 6.) According to Jeffrey Atkins, Defendant's assets were "repossessed." (Doc. 24 at 2.)

On April 2, 2019, Rhonda Atkins emailed Plaintiffs:

> The report lists us as Atkins Speciality [sic] Services Inc. PO Box 330, Tehachapi CA 93561 Fed ID: 46-2143903. This needs to be changed as we have closed Atkins Specialty Services Inc. completely. All corporation items, licenses, insurance. The correct company name is Atkins Services Inc., 1085 Voyager Drive #330, Tehachapi CA 93561 Fed ID : 82-2803183. We would like to report to the correct company for legal purposes.

(Doc. 16-26 ¶ 16; Doc. 16-31.) After receiving Rhonda Atkins' email, Plaintiffs checked past contribution reports purportedly received from Defendant and noted that, beginning in November

4

2017, the reports were made in the name of Atkins Services Inc. ("ASI"), which had been formed in September 2017, instead of in Defendant's name. (*See* Doc. 16-11 at 1; Doc. 16-26 ¶¶ 17–18.)

On July 23, 2019, Jeffrey Atkins filed a Statement of Information with the California Secretary of State on behalf of ASI. (*See* Doc. 16-11 at 1–3.) The filing indicates ASI is an "electrical-instrumentation" business and lists Jeffrey Atkins as CEO and director of ASI, and Rhonda Atkins as Secretary and CFO. (*See id.* at 3.) An amended filing substituted Justin Atkins for Rhonda Atkins as Secretary of ASI. (*See id*. at 4.) According to Jeffrey Atkins, ASI performs "maintenance work, no construction, no industrial, no remodel, no wire/conduit no instillation of electrical gear," and specifically "work installing and repairing oil field equipment; central pumping units, compressors, engines, oil and water separation units and steam generators." (Doc. 24 at 10.)

Plaintiffs served post-judgment requests for production on Defendant on November 1, 2019; responsive documents were produced in February 2020. (Doc. 16-16; Doc. 16-21; Doc. 16-22.) On June 10, 2020, Plaintiffs filed the present motion to amend the Revised Final Judgment to add Jeffrey and Rhonda Atkins (collectively, the "Atkinses"), as alter egos of Defendant, and ASI, as a successor corporation. (Doc. 16.)

### III.    DISCUSSION

Federal Rule of Civil Procedure 69(a) "empowers federal courts to rely on state law to add judgment-debtors" to money judgments. *In re Levander*, 180 F.3d 1114, 1120–21 (9th Cir. 1999). *See also Katzir's Floor & Home Design, Inc. v. M-MLS.com*, 394 F.3d 1143, 1148 (9th Cir. 2004). Under Rule 69(a)(1), federal district courts in California may apply California Code of Civil Procedure section 187 ("section 187"), which authorizes courts to amend judgments to add additional judgment debtors. *See Katzir's*, 394 F.3d at 1148 (9th Cir. 2004); *NEC Electronics Inc. v. Hurt*, 208 Cal. App. 3d 772, 778 (1989). "Judgments are often amended to add additional judgment debtors on the grounds that a person or entity is the alter ego of the original judgment debtor. This is an equitable procedure based on the theory that the court is not amending the judgment to add a new defendant but is merely inserting the correct name of the real defendant." *NEC Electronics*, 208 Cal. App. 3d at 778. A plaintiff seeking to amend a judgment "bears the burden to prove by a preponderance of the evidence" that an additional debtor is the alter ego of the

originally-named defendant. *21st Century Fin. Services, LLC v. Manchester Fin. Bank*, 255 F. Supp. 3d 1012, 1022 (S.D. Cal. 2017). The application of the alter ego doctrine is also "subject to a limitation arising from considerations of due process." *Wolf Metals Inc. v. Rand Pacific Sales, Inc.*, 4 Cal. App. 4th 698, 703 (2016).

In addition to the alter ego theory, California courts may add a successor corporation as a judgment debtor under section 187 where the successor is a "mere continuation" of its predecessor corporation. *McClellan v. Northridge Park Townhome Owners Ass'n*, 89 Cal.App.4th 746, 753–54 (2001).

**A.     Alter Ego Liability of Jeffrey and Rhonda Atkins**

Plaintiffs seek to amend the Revised Final Judgment to add Jeffrey and Rhonda Atkins as the alter egos of Defendant. "Ordinarily, a corporation is regarded as a legal entity, separate and distinct from its stockholders, officers and directors, with separate and distinct liabilities and obligations. A corporate identity may be disregarded—the 'corporate veil' pierced—where an abuse of the corporate privilege justifies holding the equitable ownership of a corporation liable for the actions of the corporation. Under the alter ego doctrine, then, when the corporate form is used to perpetrate a fraud, circumvent a statute, or accomplish some other wrongful or inequitable purpose, the courts will ignore the corporate entity and deem the corporation's acts to be those of the persons or organizations actually controlling the corporation, in most instances the equitable owners." *Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 538 (2000).

"In California, two conditions must be met before the alter ego doctrine will be invoked. First, there must be such a unity of interest and ownership between the corporation and its equitable owner that the separate personalities of the corporation and the shareholder do not in reality exist. Second, there must be an inequitable result if the acts in question are treated as those of the corporation alone." *Id*. Factors that courts have considered when making an alter ego determination include: (1) commingling of funds and other assets; (2) the holding out by one entity that it is liable for the debts of the other; (3) identical equitable ownership of the two entities; (4) use of the same offices and employees; (5) use of one as a mere shell or conduit for the affairs of the other; (6) inadequate capitalization; (7) disregard of corporate formalities; (8) lack of segregation of corporate

records; and (9) identical directors and officers. *Id*. at 538–39. "No one characteristic governs, but the courts must look at all the circumstances to determine whether the doctrine should be applied." *Id*. at 539. "Alter ego is an extreme remedy, sparingly used." *Sonora Diamond Corp*., 83 Cal. App. 4th at 539. "The alter ego doctrine does not guard every unsatisfied creditor of a corporation but instead affords protection where some conduct amounting to bad faith makes it inequitable for the corporate owner to hide behind the corporate form. Difficulty in enforcing a judgment or collecting a debt does not satisfy this standard." *Id*. at 539.

Here, Jeffrey and Rhonda Atkins were the sole officers, directors, and shareholders of Defendant. (Doc. 16-9 ¶ 3; Doc. 16-10 at 4; Doc. 16-19 ¶ 1.) According to Defendant's filings in its bankruptcy proceeding, of which the undersigned takes judicial notice,[3] Defendant's "office and storage yard [were] located at the Atkin's [sic] home. Mr. and Mrs. Atkins family's personal assets are at the same location as [Defendant's] assets." (Doc. 16-14 at 2.) Defendant's principal executive office was listed as 20465 Dogwood Drive, Tehachapi, California, 93561, which is the residence of Jeffrey and Rhonda Atkins. (*See* Doc. 16-10 at 4; Doc. 16-14. *See also* Doc. 16-9 ¶ 8; Doc. 16-15.) Documents obtained from Jeffrey Atkins during post-judgment discovery show Rhonda Atkins used Defendant's bank account to reimburse herself for thousands of dollars in personal expenses, including clothing, beauty products, craft supplies, entertainment expenses, sporting goods, and other items. (*See* Doc. 16-9 ¶¶ 9–10, 16; Doc. 16-14; Doc. 16–23; ). The documents also show that Jeffrey Atkins used Defendant's funds to purchase an automobile as a "restoration project." (Doc. 16-9 ¶ 17; Doc. 16-21 at 2.)

Despite evidence supporting the conclusion that the Atkinses abused the corporate privilege, the due process limitation on alter ego liability prevents the undersigned from recommending amending the Revised Final Judgment to impose liability for Defendant's debts to the Atkinses. Due process "'guarantees that any person against whom a claim is asserted in a judicial proceeding shall have the opportunity to be heard and to present his defenses.'" *Katzir's*, 394 F.3d at 1149–50 (quoting *Motores de Mexicali v. Superior Court*, 51 Cal.2d 172, 175, 331 P.2d 1 (1958)). To satisfy this due process limitation when seeking to add a judgment debtor to an existing judgment, the new

---

[3] *See* Fed. R. Evid. 201.

debtor must have "'had control of the litigation and occasion to conduct it with a diligence corresponding to the risk of personal liability that was involved.'" *Katzir's*, 394 F.3d at 1150 (quoting *NEC Electronics*, 208 Cal. App. 3d at 779).

The "[c]ontrol of the litigation sufficient to overcome due process objections" contemplates "some active defense of the underlying claim." *NEC Electronics*, 208 Cal. App. 3d at 781. *See also Wolf Metals*, 4 Cal. App. 5th at 703–04 (adding company's president as a judgment debtor following company's bankruptcy was erroneous because company "failed to present an evidence-based defense before judgment was entered against it."). Here, Defendant did not defend against the suit at all, much less mount an "active" or "evidence-based" defense. Instead of responding to the suit, Defendant filed for bankruptcy. Instead of defending the lawsuit, Defendant stipulated to an entry of judgment in exchange for dismissal of the bankruptcy action. Instead of contesting the alleged default under the Stipulated Judgment, it agreed to sign onto a Revised Final Judgment.

Plaintiffs do not dispute that Defendant did not mount a defense to this lawsuit. Instead, they assert that this case "does not present any of the potential due process concerns expressed by the Courts in *Motores* [] and *NEC Elec[tronics]*" because the Atkinses "actively participated in the proceedings" and "[a]s shareholders, officers and directors, as well as employees of [Defendant], [they] were behind each decision made during this litigation." (Doc. 16-1 at 11.) Plaintiffs, however, fail to provide a factual basis for these contentions. Merely being officers and directors of Defendant does not necessarily mean that they controlled this action. *See Nat'l Grange of the Order of Patrons of Husbandry v. California Guild*, No. CV 2:14-676 WBS DB, 2017 WL 823355, at *4 (E.D. Cal. Mar. 2, 2017) Plaintiffs also emphasize Rhonda Atkins' participation in Defendant's bankruptcy proceeding (*see* Doc. 16-1 at 11–12), but this does not suffice to show that the Atkinses exerted control over ***this*** lawsuit. *Cf. Katzir's*, 394 F.3d at 1150 (insufficient evidence of control where owner hired and discharged the corporation's attorneys, appeared at settlement conferences, and financed the litigation).

Even if Plaintiffs had adduced evidence of the Atkinses' control, Plaintiffs have not established by a preponderance of the evidence that the Atkinses had "occasion to conduct the litigation with a diligence corresponding to the risk of personal liability involved." *NEC*

8

*Electronics*, 208 Cal. App. 3d at 779. The Atkinses were neither named as defendants in the lawsuit, nor were they alleged to be the alter egos of Defendant in Plaintiffs' complaint. *Cf. Oceans II, Inc. v. Skinnervision, Inc.*, Case No. 2:12–cv–06867–CAS (Ex), 2015 WL 4484208, at *5 (C.D. Cal. July 20, 2015) (finding addition of individual to judgment did not offend due process where individual was named as a defendant and appeared on behalf of himself months before abandoning the action). Plaintiffs do not show, for example, that the interests of Defendant and the Atkinses were aligned in this action. *See NEC Electronics*, 208 Cal. App. 3d at 780–81 (noting that the interests of the party to be added to the judgment, the judgment debtor corporation's CEO, were not the same as the corporation's, as the corporation "had no incentive to defend the . . . lawsuit because [it] was on the verge of bankruptcy," whereas the CEO "was not named as a party, had no risk of personal liability and therefore was not required to intervene." Because the interests of the corporation and CEO were different, "we cannot say that [the CEO] had occasion to conduct the litigation with a diligence corresponding to the risk of personal liability that was involved or that [the CEO] was virtually represented in the lawsuit.") Indeed, it appears, as in *NEC Electronics*, their interests diverged: Defendant had no incentive to defend the lawsuit because it was on the "verge of bankruptcy," and the Atkinses, as non-parties, had no risk of personal liability. *See id. See also Katzir's*, 394 F.3d at 1149–50 (finding that the district court clearly erred in adding an individual to a judgment who "had no personal duty to defend the underlying lawsuit"); *Cadence Design Sys., Inc. v. Pounce Consulting, Inc.*, No. 17-CV-04732-PJH, 2019 WL 3576900, at *6 (N.D. Cal. Aug. 6, 2019) ("[M]ere participation" by a CEO in his company's litigation "does not come close to outweighing the lack of evidence showing that [the CEO] had notice that he faced the risk of personal liability before the court entered judgment.").

In view of the foregoing, the undersigned finds due process precludes amending the judgment to add Jeffrey and Rhonda Atkins as judgment debtors. *See 21st Century Fin. Servs.*, 255 F. Supp. 3d at 1032 (S.D. Cal. 2017); *Directi Internet Sols. Pvt. Ltd. v. Dhillon*, Civ. No. 2:12-cv-1045-WBS, 2014 WL 3057514, at * (E.D. Cal. July 7, 2014) (declining on due process grounds to add individual as judgment debtor where no evidence of control of the litigation). *See also Nat'l Grange of the Order of Patrons of Husbandry*, 2017 WL 823355, at *4–5 (same).

### B. ASI as a Successor Corporation to Defendant

Plaintiffs also seek to add ASI as a judgment debtor on grounds that it is a successor corporation to Defendant. *See McClellan,* 89 Cal. App. 4th at 754. To be a successor, or "mere continuation," of a predecessor corporation, "California courts require evidence of one or both of the following factual elements: (1) a lack of adequate consideration for acquisition of the former corporation's assets to be made available to creditors, or (2) one or more persons were officers, directors, or shareholders of both corporations." *Katzir's*, 394 F.3d at 1150. Although these factors are presented in the disjunctive, "[i]nadequate consideration is an 'essential ingredient' to a finding that one entity is a mere continuation of another." *Id*. at 1150 (quoting *Maloney v. Am. Pharm. Co*., 207 Cal. App. 3d 282, 289 (1988)).

The judgment debtor must also have transferred its ***principal*** assets to justify finding that the transferee corporation is a mere continuation of the original judgment debtor. *See Davis v. Chase Bank U.S.A., N.A*., No. CV 06–04804 DDP (PJWx), 2010 WL 7919098, at *4 (C.D. Cal. Nov. 15, 2010) ("As the Ninth Circuit has held, the 'mere continuation' inquiry is only relevant where one corporation acquires 'all of the assets of another corporation.'") (quoting *Katzir's*, 394 F.3d at 1150); *see also Maloney*, 207 Cal. App. 3d at 288 (refusing to impose successor liability where the new corporation obtained only 10% of the old corporation's total assets). "[T]here must be a causal relationship between a successor's acquisition of assets (*i.e*., inadequate consideration), and the predecessor's creditors' inability to get paid." *Sunnyside Dev. Co., LLC v. Opsys Ltd*., No. C 05 0553 MHP, 2007 WL 2462142, at *10 (N.D. Cal. Aug. 29, 2007) (quoting *Katzir's*, 394 F.3d at 1151).

Plaintiffs have failed to show that Defendant transferred any of its assets—much less its principal assets—to ASI. Plaintiffs assert that ASI "paid no consideration to [Defendant] for the assets" of ASI and merely "assumed [them]," but they provide no factual basis for this assertion. The undisputed facts show otherwise: Defendant's assets were "repossessed"—not sold to or acquired by ASI for inadequate consideration. (*See* Doc. 24 at 2. *See also* Doc. 16-21.) Plaintiffs assert that the Atkins "treated the two corporations as one," as evidenced by the fact that Rhonda Atkins submitted contribution reports on behalf of ASI to meet Defendant's contractual obligations.

(*See* Doc. 16-1 at 22.)  While this may be evidence of a disregard of the corporate form of the two companies, it does not demonstrate that ASI "assumed the assets" of Defendant.

Although it is undisputed that ASI and Defendant have the same officers in Jeffrey and Rhonda Atkins, common officers and shareholders alone are insufficient to establish a mere continuation. *See Mitsui O.S.K. Lines, Ltd. v. Seamaster Logistics, Inc*., Case No. 11–cv–02861–SC, 2013 WL 3786618, at *5–6 (N.D. Cal. July 18, 2013) (noting that "several courts have held that inadequate consideration is an essential ingredient or a crucial factor in assessing successor liability" and collecting cases); *see also Franklin v. USX Corp*., 87 Cal. App. 4th 615, 625–27 (2001) (characterizing the payment of inadequate cash consideration as a "crucial factor" and finding that it must be present to impose successor liability under a mere continuation theory).  Moreover, Plaintiffs' contention that ASI is a "mere continuation" of Defendant because it is "in the same line of business" is belied by evidence showing that ASI performs different work than Defendant.  *Cf. Wolf Metals*, 4 Cal. App. 5th at 709–10 (finding mere continuation where the successor corporation acquired the predecessor corporation's remaining assets, in addition to evidence that the successor corporation was operating the identical business in the same location).  According to the Atkinses, while Defendant performed "all types of electrical work" including "new construction, commercial, and industrial," ASI in the business of "installing and repairing oil field equipment" and does not perform new construction or industrial electrical work.  (Doc. 24 at 10.)  To the extent ASI required "electrical work requiring actual electricians," such work was performed by others.  *(See id*. at 11.)

Ultimately, however, Plaintiffs have failed to prove ASI is the mere continuation of Defendant because they have failed to establish the essential ingredient—that Defendant's principal assets were transferred to ASI for inadequate consideration.  *See Directi Internet Sols.*, 2014 WL 3057514, at *3 (finding no successor liability, even though there was evidence that the successor corporation was essentially the predecessor corporation operating under a different name because there was no evidence the successor corporation paid inadequate consideration for the predecessor's assets).  "This is not a technicality but a failure to establish a fundamental element necessary for adding a judgment debtor under a mere continuation theory."  *Reno-Tahoe Specialty, Inc. v. Mungchi, Inc*., 468 F. Supp. 3d 1236, 1242 (C.D. Cal. 2020) (citing *Garcia v. New Albertson's, Inc*.,

No. 2:13–CV–05941–CAS (JCGx), 2014 WL 4978434, at *12 (C.D. Cal. Oct. 3, 2014) ("[I]n cases constituting the functional but not technical equivalent of a corporation transferring all or substantially all of its assets to another corporation, courts will not allow technicalities to effect inequitable results.")).

## IV.   CONCLUSION AND RECOMMENDATION

The decision to amend a judgment pursuant to California Code of Civil Procedure section 187 is an equitable one that is committed to the trial court's discretion. *See Wolf Metals*, 4 Cal. App. 5th at 703. For the reasons set forth above, the undersigned finds that the equities do not warrant amending the Revised Final Judgment entered against Defendant to add Jeffrey Atkins, Rhonda Atkins, and Atkins Services Inc.

Accordingly, the undersigned RECOMMENDS that Plaintiffs' motion to amend the judgment (Doc. 16) be DENIED.

IT IS SO ORDERED.

Dated:   **March 2, 2021**                    /s/ *Sheila K. Oberto*
                                              UNITED STATES MAGISTRATE JUDGE